## VERNON *v.* HEBERLING and others.

*(Circuit Court, S. D. Iowa, C. D.  June 11, 1887.)*

PATENTS FOR INVENTIONS—IMPROVED COFFEE AND NUT ROASTER — CONSTRUCTION OF CLAIM—MECHANICAL EQUIVALENT.

Reissued letters patent No. 9,260 were granted June 15, 1880, to William E. Vernon, for an improved coffee and nut roaster, containing in the combination a boiler heated by burners or lamps, and a nut receptacle placed over the boiler, into which the roasted nuts were delivered and kept warm by the heat radiating from the boiler and burners or lamps. The defendants manufactured a machine in which a second pan was placed below the nut-pan, into which steam was carried by a pipe from the steam-chest and cylinder of an engine after its use in moving the engine. The steam so carried into the second pan kept the roasted nuts warm in the pan or receptacle above. The proofs showed that the elements of the Vernon patent were all old. *Held,*

that said patent must be limited to the specific combination described and claimed, and that defendants' machine, therefore, could not be regarded as a mechanical equivalent infringing the same.

In Equity. Bill to restrain infringement of patent.

*Cummins & Wright*, for complainant.

*Conrad & Campbell*, for defendants.

SHIRAS, J. On the fifteenth day of June, 1880, reissued letters patent No. 9,260 were granted to complainant for an improved coffee and nut roaster, consisting of a combination of a frame surrounding and supporting a casing, within which is placed a steam-boiler or generator, heated by burners or lamps placed underneath the same, a nut receptacle being placed over the boiler and casing, into which the roasted nuts are delivered from a rotary roaster, arranged upon the frame, and operated by an engine placed on the opposite side of the frame. By placing the nut-pan over the boiler and casing, the contents thereof are kept warm by the heat coming from the boiler, and the burners or lamps placed thereunder. In the machine manufactured by the defendant, there is placed below the nut-pan a second pan, connected with the steam-chest and cylinder of the engine by a pipe through which passes the steam after its use in moving the engine, it being condensed in the second pan named; the resulting water being again conveyed back to the boiler, while the heat set free by the condensation of the steam is utilized in keeping warm the nuts placed in the receptacle. While there are several minor points of resemblance between the machines manufactured by the respective parties, it is admitted by counsel that the material and controlling question is whether the method used by defendant in heating the nut pan or tray is or is not an infringement upon that secured to complainant by his patent, it being claimed by complainant that the devices used are merely mechanical equivalents. To determine this question it is necessary to ascertain what in fact is the novelty covered by the patent to complainant.

In the specification attached to the reissued letters to complainant, he states that his invention consists—"*First*, in the peculiar construction and combination of the portable supporting frame, steam-generator, engine, roaster, and receptacle for keeping the roasted nuts hot, which is heated by the waste heat from the steam-generator, which is thus utilized; and, *second*, in the construction and combination of parts of the rotary roaster." The several elements named, to-wit, the supporting frame, steam-generator, engine, roaster, and receptacle for keeping the nuts warm, were all known before the date of the patent to complainant. His patent, therefore, is simply upon the combination of these already known elements.

In regard to the matter of a heated receptacle for containing the nuts after roasting, he cannot object to the use thereof in defendants' machine, for such heated receptacle is not his invention. It appears in a patent issued to M. M. Northrup, August 10, 1875, in a form quite similar to that used by defendant, and is therein recognized as well known.

Complainant's patent, then, does not preclude defendant from applying heat to a tray or receptacle containing the roasted nuts; but, at most, only precludes the special mode of applying the heat utilized in the complainant's combination. In this combination the heat from the lamps or burners, passing through the tubes in the boiler, combined with the heat radiating from the boiler, is brought into contact with the bottom of the nut-tray. What complainant accomplishes in this respect by his combination is to confine and utilize the otherwise waste heat radiated from the boiler, and from the lamps or burners, and by means thereof compass the heating of the nut-tray. In the defendants' machine this waste heat radiated from the boiler and lamps is not the means used to heat the nut-tray. The defendant uses the heat, freed from the condensing steam, after the same has done its work in moving the engine; and while it is true that, in one sense, the heat used in each machine is derived from the same source, to-wit, the lamps or burners used under the boilers, yet in fact it is not the same heat, nor is it applied in the same mode. In the one case it is that portion of the heat caused by the lamps or burners, which is not used in making steam, which is applied to heating the nut-tray, while in the other case it is the heat given out by the condensation of the steam into water that is communicated to the nut-tray. If the complainant was the originator of the idea of keeping the roasted nuts in a heated tray or receptacle, and his patent covered the general method of heating such tray by the communication of heat to the bottom or sides of such tray, for the purpose named, then it might well be that defendant's machine would be held to be an infringement upon complainant's patent, because, in such case, the use of a heated tray or receptacle would be the principal element in determining the question of infringement. The case is not, however, presented in this light. As already stated, complainant is not the inventor of any new element. His patent is upon a combination in which the waste heat from the burners and boiler are used to heat the nut-tray. In defendants' machine this waste heat is not used for this purpose, but, on the contrary, it is allowed to escape, and the heat applied to the nut-tray is derived from the condensed steam.

The combination patent of complainant covers the use of the waste heat from the burners and boiler for the old purpose of heating the nut-tray. The defendants' machine does not use this heat for this purpose, but in place thereof utilizes the steam used in moving the engine. The latter is not the equivalent of the former, because the point is not whether the two machines accomplish the same result of heating the nut-tray, nor whether both include the application of heat to the nut-tray, but whether, in accomplishing the old and known result of heating the tray, by the old and known method of bringing heat in connection with the bottom of such tray, both machines use methods and devices that are the equivalent of each other.

If it be true that the method used by defendant is the equivalent of that used by complainant, then it is difficult to see in what mode heat could be applied to the purpose of warming a nut-tray, without its being

deemed to be a mere equivalent to the method used by complainant, and in effect his combination patent would thus be enlarged so as to cover almost the entire field of applying heat to nut-trays. Complainant's patent in this particular in fact covers very narrow ground, and covers only the use of the waste heat from the boilers and burners, applied in the method described; and, as defendants' machine does not use this waste heat for the purpose named, it cannot be held to be an infringement upon complainant's patent.

The bill must therefore be dismissed, at cost of complainant.